# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CR 09-0411 RB |
| | ) | |
| PHILLIP JAMES JUAREZ, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## AND ORDER DENYING MOTION TO SUPPRESS

**THIS MATTER** came before the Court on Defendant's Motion to Suppress Evidence [Doc. 43], filed on March 25, 2009. The Court held an evidentiary hearing on this motion on April 20, 2009. Having considered the submissions of counsel, evidence adduced at the hearing, relevant law, and being otherwise fully advised, I issue these findings of fact and conclusions of law and deny Defendant's motion.

## FINDINGS OF FACT

1.      The Indictment charges Defendant with possession with intent to distribute 5 grams and more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and aiding and abetting, in violation of 18 U.S.C. § 2. Defendant filed his motion to suppress on March 25, 2009, seeking to suppress evidence and statements on the grounds that law enforcement agents lacked reasonable suspicion to stop his vehicle and any consent to search was tainted by the illegality of the stop. On April 9, 2009, Plaintiff filed a response in opposition to the motion. An evidentiary hearing was held on April 20, 2009.

2.      Evidence adduced at the hearing established the following facts. On August 19, 2008,

Border Operation Task Force (herein "BOTF") Agents Louis Tavizon, Adrian Flores, William Chadborn, and others proceeded to 402 Pine Street in Bayard, New Mexico, in order to serve a misdemeanor warrant on Victor Padilla. The warrant arose from a traffic stop of Victor Padilla that occurred two to three weeks prior to August 19, 2008. During the traffic stop, officers seized over five ounces of crack cocaine from Victor Padilla.

3.      In order to reach the Padilla residence at 402 Pine Street in Bayard, the agents proceeded north on Central Avenue, turned right and proceeded east on Poplar Street, crossed the railroad tracks, and turned left on Pine Street. The Padilla residence, located on the west side of Pine Street, is the second house to the north of the intersection of Pine Street and Poplar Street. Pine Street is a narrow, two-way street.

4.      Agent Tavizon was the front seat passenger in a marked Grant County Sheriff's Office vehicle driven by a Grant County Sheriff's deputy. Agent Flores followed as the driver of a green unmarked Ford pickup truck with Agent Chadborn as a passenger.

5.      As the marked unit containing Agent Tavizon rounded the corner from Poplar Street onto Pine Street, Agent Tavizon saw a gold Cadillac parked on the west side of Pine Street, facing north in the southbound lane. The tail end of the Cadillac was several feet from the curb. The Cadillac was parked on the opposite side of the street from which traffic would suggest it ought to be. Due to the narrowness of Pine Street, the Cadillac partially blocked the southbound lane.

6.      A woman was standing at the open driver's side door of the Cadillac. Agent Tavizon recognized the woman as Gayle Padilla, the spouse of Victor Padilla. Agent Tavizon knew that Gayle Padilla was suspected of trafficking narcotics in the Bayard area and that Victor Padilla recently possessed more than five ounces of crack cocaine. Agent Tavizon knew that Defendant was the subject of a narcotics investigation. Agent Tavizon suspected that Defendant was the driver of

the Cadillac, because the Cadillac looked like Defendant's vehicle.

7.      Gayle Padilla was leaning into the Cadillac and moving her hands inside the vehicle. Agent Tavizon was unable to see what Gayle Padilla was doing inside the Cadillac because her back was to him.  However, it appeared to Agent Tavizon that she was engaged in some type of drug deal.[1]  When Gayle Padilla looked over her shoulder and saw the marked police car rounding the corner, she appeared nervous.

8.      The deputy parked the marked police vehicle about one car length behind the Cadillac.  Agent Tavizon exited the marked police vehicle, walked in front of it, and approached Gayle Padilla.  Agent Tavizon wore plain clothes, displayed a badge, and carried a gun.  Agent Tavizon did not draw his gun.  The Cadillac remained stationary with the engine running.

9.      As soon as she saw Agent Tavizon get out of the marked police vehicle, Gayle Padilla slammed the Cadillac's door and walked toward a gate in the fence at 402 Pine Street.  Agent Tavizon directed Defendant not to leave and called to Gayle Padilla to stop.  Defendant appeared very nervous and shifted the gears on the Cadillac.  Agent Tavizon directed Defendant to put the Cadillac in park.  Agent Tavizon concentrated his attention on Gayle Padilla in order to prevent her from passing through the gate onto her property where she might hide suspected drugs.

10.     Meanwhile, Agent Flores had rounded the corner in the green pickup immediately after the marked police car.  Agent Flores immediately recognized the Cadillac as belonging to Defendant.  Agent Flores had actively investigated Defendant for narcotics trafficking during February and March of 2007.  Agent Flores knew that an explosives charge against Defendant had

---

[1]   Interestingly, Defendant testified at the evidentiary hearing that Gayle Padilla and Defendant were, in fact, conducting illegal business.  Due to the fact that this information was not known to the agents at the time of the incident, I do not consider it in assessing the legality of the agents' actions.  *See United States v. Ubiles*, 224 F.3d 213, 218 (3rd Cir. 2000) ("[P]ost-hoc justification for stops and searches has been repeatedly rejected.").

been dismissed for lack of evidence, and, based on information from a confidential informant received in February or March of 2007, Agent Flores believed that Defendant carried firearms.

11.    Additionally, Agent Flores knew the officers were at 402 Pine Street to serve a traffic warrant on Victor Padilla and that five ounces of crack cocaine had been seized from Victor Padilla during the traffic stop.  Agent Flores observed Gayle Padilla standing at the open door of the Cadillac, engaged in some sort of transaction with Defendant, and Gayle Padilla's actions in trying to evade Agent Tavizon.

12.    Based on the explosives charge and the firearms information, Agent Flores believed that Defendant posed a threat to officer safety.  Based on the seizure of a significant quantity of cocaine from Victor Padilla, and his observation of Gayle Padilla and Defendant engaged in an apparent drug deal, Agent Flores could reasonably surmise that drugs were sold out of 402 Pine Street and that Defendant was involved in illegal activity.  For these reasons, Agent Flores wanted to cover Agent Tavizon and watch the occupants of the Cadillac.  In order to achieve this goal, Agent Flores abruptly parked the green pickup truck in front of the Cadillac, at about a 45 degree angle from the curb.

13.    Defendant had shifted the Cadillac into drive and was prepared to drive away.  When Agent Flores parked the pickup in front of the Cadillac, Defendant shifted the Cadillac into reverse. At this point, a reasonable law enforcement officer would believe that Defendant was preparing to flee.  Agent Flores jumped out of the green pickup with his gun drawn and ran to the driver's side door of the Cadillac.  Upon reaching the driver's side door of the Cadillac, Agent Flores opened the door and observed a glass jar containing a green leafy substance on top of a styrofoam drink cup in the center console of the Cadillac.  Agent Flores asked Defendant to identify the substance. Defendant responded that the substance was "bud," street parlance for marijuana.

4

14.     Agent Flores asked Defendant to step outside the Cadillac for a pat down search. Defendant complied.  During the pat down, Agent Flores felt an elongated bulge in the right front pocket of Defendant's shorts.  Agent Flores extracted the bulge, a baggie containing a white crystalline substance, which field-tested positive for methamphetamine.  The substance in the jar field-tested positive for marijuana.

15.     As Agent Flores ran to the driver's side of the Cadillac, Agent Chadborn approached the passenger side of the Cadillac and stood outside the passenger door.  Agent Chadborn could see there was a person sitting in the passenger seat.  After Agent Flores stated there were drugs in the Cadillac, Agent Chadborn opened the passenger door and asked the person, Ashley Juarez, Defendant's sister, to get out of the car.  Agent Chadborn directed Ms. Juarez to stand by the back of the car and handcuffed her.  Additional methamphetamine and a scale were found in Ashley Juarez's purse.

16.     A female officer arrived and conducted a pat down search on Gayle Padilla.  No drugs were found on her and she was not arrested.  Defendant and Ashley Juarez were transported to the BOTF office.  Upon questioning, Defendant was charged. Ashley Juarez was released without being charged.

17.     Agent Tavizon and Agent Flores testified that the driver's side window of the Cadillac was open.  Defendant, Ashley Juarez, and Timothy Padilla, Defendant's manager, testified that the driver's side window of the Cadillac did not open and was bolted shut well before August 19, 2008.

18.     Defendant testified that he and Ashley Juarez had given Gayle Padilla a ride home in the Cadillac and were in the process of saying goodbye to her when the agents arrived.  Ashley Juarez testified that Gayle Padilla was waiting for Defendant outside 402 Pine Street when Ashley

5

Juarez and Defendant drove up in the Cadillac and the agents arrived shortly thereafter. This inconsistency tends to undercut the credibility of both Defendant and Ashley Juarez. Their credibility is further eroded by their understandable desire to keep Defendant out of prison. Timothy Padilla, as Defendant's manager, has a financial stake in keeping Defendant out of prison. This financial interest tends to undercut the credibility of Timothy Padilla.

19. Having observed the demeanor of the witnesses, I find that the testimonies of Agent Flores and Agent Tavizon are fully credible. However, I find that Agent Flores' and Agent Tavizon's recollection regarding the open window was mistaken. I discount this aspect of Agent Tavizon's and Agent Flores' testimonies and I find that the window was closed and that Agent Flores opened the door in order to make contact with Defendant, to cover himself and the other agents in case Defendant had a firearm, and to prevent Defendant from leaving the scene. Other than the discrepancy regarding the window, I fully credit the testimonies of Agent Tavizon and Agent Flores. In all other respects, to the extent the testimonies of Agent Tavizon and Agent Flores conflict with the testimonies of the defense witnesses, I credit the testimonies of Agent Tavizon and Agent Flores and discredit the testimonies of the defense witnesses.

## CONCLUSIONS OF LAW

1. "The Fourth Amendment does not prohibit all searches and seizures; rather, only unreasonable searches and seizures are prohibited. *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . .")." *United States v. Maddox*, 388 F.3d 1356, 1361 (10th Cir. 2004). "Beginning with *Terry v. Ohio*, 392 U.S. 1 (1968), the Court has recognized that a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Jud. Dist.*

*Ct.*, 542 U.S. 177, 185 (2004).

2.      Defendant contends that the agents stopped the Cadillac after he started to drive away.  Because the Cadillac remained stationary, the encounter between Defendant and Agent Tavizon and Agent Flores is more properly characterized as an investigative detention rather than a traffic stop.  However, the same standard; namely, reasonable suspicion, would apply regardless of whether or not the Cadillac was in motion.

3.      In order to "satisfy the reasonable suspicion standard, an officer must have a 'particularized and objective' basis for thinking the detained individual is involved in criminal activity.  *United States v. Cortez-Galaviz*, 495 F.3d 1203, 1206 (10th Cir. 2007) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).  The officer "need not rule out the possibility of innocent conduct;" he simply must possess "some minimal level of objective justification" for making the stop. *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004).  Evidence falling "considerably short" of a preponderance satisfies the reasonable suspicion standard. *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation and citations omitted)).

4.      The agents went to the Padilla residence to execute a municipal arrest warrant on Victor Padilla, who had been arrested with five ounces of crack cocaine.  Agent Flores recognized the Cadillac as belonging to Defendant and knew Defendant had been investigated for narcotics violations.  Agent Tavizon believed that the Cadillac belonged to Defendant.  The agents saw Gayle Padilla, the wife of Victor Padilla, engaged in some sort of transaction with Defendant inside the Cadillac.  Agent Tavizon knew that Gayle Padilla was suspected of dealing drugs out of 402 Pine Street.  These facts gave Agent Tavizon the requisite reasonable suspicion to direct Defendant not to leave and to shift the Cadillac into park.

5.      Agent Flores had investigated Defendant for narcotics trafficking during February

and March of 2007.  Agent Flores knew that Defendant had been charged in connection with explosives, and was aware that a confidential informant had stated Defendant carried firearms.  At the hearing, defense counsel argued that the approximate 18-month time period between the prior investigation and the incident had diluted the relevance of this information.  Consideration of the staleness of information usually arises in the context of whether information relied upon in obtaining a warrant supports probable cause, and not in the context of an officer's evaluation of the dangerousness of a subject.  *See United States v. Mathis*, 357 F.3d 1200, 1207 (10th Cir. 2004).  Notably, however, "[w]here the offense in question is ongoing and continuing, the passage of time is not of critical importance."  *Id.*  Moreover, information related to firearms does not grow stale as quickly as information regarding less durable contraband, such as drugs.  *United States v. Basham*, 268 F.3d 1199, 1206 (10th Cir. 2001).  In that the information involved firearms, Agent Flores properly relied on the information gleaned concerning the firearms during his earlier investigation of Defendant in evaluating the situation on August 19, 2008.

6.      Agent Flores knew that Victor Padilla had been caught with five ounces of crack cocaine.  The agents saw Defendant and Gayle Padilla, the wife of Victor Padilla, engaged in some sort of transaction inside the Cadillac.  Agent Flores recognized Defendant as the subject of a prior narcotics investigation, and recalled the explosives charge and the information concerning Defendant carrying firearms.  These facts gave Agent Flores the requisite reasonable suspicion to park his truck in front of the Cadillac so as to prevent Defendant from driving away.

7.      When Agent Flores alighted from the pickup, Agent Tavizon was preoccupied with Gayle Padilla and Defendant had shifted the Cadillac into reverse.  When Agent Flores parked the pickup in front of the Cadillac, Defendant shifted the Cadillac into reverse.  At this point, a reasonable law enforcement officer would believe that Defendant was preparing to flee.  In addition,

Defendant's criminal history and the information concerning firearm possession suggested that Defendant might have a gun. "Officers can conduct a protective search of a vehicle's passenger compartment for weapons during an investigative detention when officers have a reasonable belief that a suspect poses danger." *United States v. Dennison*, 410 F.3d 1203, 1210 (10th Cir. 2005). "Police officers are authorized to take reasonable steps necessary to secure their safety and maintain the status quo." *United States v. Garcia*, 459 F.3d 1059, 1063 (10th Cir. 2006). In the interest of officer safety, an officer may conduct a pat-down search for weapons. *See United States v. Sanchez*, 519 F.3d 1208, 1216 (10th Cir. 2008). Under the circumstances, Agent Flores' action in opening the door to the Cadillac to conduct a pat down of Defendant was supported, by reasonable suspicion.

8.      As soon as he opened the door, Agent Flores observed the glass jar containing marijuana sitting on the styrofoam cup in the front console of the Cadillac. The observation was valid in that Agent Flores was lawfully in a position from which he could view the marijuana. *See United States v. Gonzalez-Acosta*, 989 F.2d 384, 387 (10th Cir. 1993). Defendant confirmed that the green leafy substance in the jar was, in fact, marijuana. "An officer has probable cause to arrest if, under the totality of the circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." *United States v. Munoz-Nava*, 524 F.3d 1137, 1144 (10th Cir. 2008) (quoting *United States v. Brooks*, 438 F.3d 1231, 1241 (10th Cir. 2006)). The presence of marijuana in plain view, and in close proximity to Defendant, gave rise to probable cause to believe that Defendant had violated the law; namely, possession of marijuana.

9.      At that point, Agent Flores knew that a crime had been committed, which gave rise to probable cause to arrest Defendant. In addition to being supported by reasonable suspicion, the subsequent pat-down of Defendant was justified as a search incident to his arrest. The search of the

vehicle and Ashley Juarez's purse were justified by probable cause. "Once the officer[s'] suspicions rise to the level of probable cause, they are empowered to search the entire vehicle, including the trunk and all containers therein that might contain contraband." *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008) (internal quotation marks omitted).  Based on the totality of the circumstances, the actions of the agents were supported by reasonable suspicion and probable cause. In that the actions of the agents comported with the Constitution, Defendant's consent to search was neither necessary, nor tainted.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Suppress Evidence [Doc. 43], filed on March 25, 2009, is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**